# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LETHA F. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 09-516-SLR |
| | ) |
| MICHAEL ASTRUE, Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

Karen Y. Vicks, Esquire of Karen Y. Vicks, LLC, Dover, Delaware.  Counsel for Plaintiff.

David C. Weiss, Esquire, United States Attorney, District of Delaware, and Dina White Griffin, Esquire, Special Assistant United States Attorney, District of Delaware.  Counsel for Defendant.  Of Counsel:  Eric P. Kressman, Esquire, Regional Chief Counsel, and Rovert S. Drum, Esquire, Assistant Regional Counsel, of the Office of General Counsel, Philadelphia, Pennsylvania.

## MEMORANDUM OPINION

Dated:  September 29, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Letha F. Davis ("plaintiff") appeals from a decision of Michael J. Astrue, the Commissioner of Social Security ("defendant"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Plaintiff has filed a motion for summary judgment asking the court to award her DIB benefits or, alternatively, remand the case for further proceedings.  (D.I. 10) Defendant has filed a cross-motion for summary judgment, requesting the court to affirm his decision and enter judgment in his favor.  (D.I. 12)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).[1]

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for DIB on December 11, 2006, alleging disability since September 7, 2006, due to a variety of impairments, including arthritis, high blood pressure, sciatica, back pain, hypothyroid, fibromyalgia, incontinence, and foot problems.  (D.I. 8 at 13)  Plaintiff was 44 years old at the time her application for benefits was filed.  (*Id.*)  Her initial application was denied on March 16, 2007.  (*Id.* at

---

[1]Under § 405(g),

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . .  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .

42 U.S.C. § 405(g).

58)  Plaintiff requested reconsideration on April 17, 2007, and her request was denied on June 22, 2007.  (*Id.* at 63, 68)  Thereafter, plaintiff requested a hearing, which took place before an administrative law judge ("ALJ") on June 2, 2008.  After receiving testimony from plaintiff and a vocational expert ("VE"), the ALJ decided on July 8, 2008, that plaintiff is not disabled within the meaning of the Social Security Act, specifically, that plaintiff can perform other work that exists in the national economy.  (*Id.* at 21)  Plaintiff's subsequent request for review by the Appeals Council was denied.  (*Id.* at 1)  On July 15, 2009, plaintiff brought the current action for review of the final decision denying plaintiff DIB.  (D.I. 2)

### B.  Plaintiff's Non-Medical History

Plaintiff is currently 48 years old.  She has a high school education and obtained her Associate's Degree.  (D.I. 8 at 26)  Her past relevant work consists of operating heavy machinery for the United States Air Force as a transportation specialist.  Plaintiff retired from active military service in 2004, and attempted to return to work for the United States Postal Service in 2005.  (*Id.* at 27-29)  However, plaintiff was injured on the job a few weeks after starting and did not return to work.  Plaintiff has not engaged in substantial gainful activity since September 7, 2006, the date of her disability onset.  (*Id.* at 13)  However, plaintiff reported earnings of $4,303.51 in 2005, for babysitting her 7 year old nephew for a period of four months.

### C.  Medical Evidence

In 2003, a neurologist referred plaintiff to Dr. Eric Tamesis, a rheumatologist, for evaluation of possible arthritis.  Plaintiff treated with Dr. Tamesis for hand, knee, ankle,

2

and back pain.  Plaintiff reported stiffness in the mornings lasting up to half an hour.
(*Id.* at 392)  Dr. Tamesis's progress notes document improvement in plaintiff's reports
of pain overall, but she still experienced knee pain on the stairs and swelling of her
ankles and feet in the mornings.  (*Id.* at 393)

      In 2005, plaintiff underwent twelve sessions of physical therapy for the left ankle
injury she sustained while working at the Postal Service.  (*Id.* 281-282)  She was
released to return to modified work duty in July 2005.  (*Id.*)  In September 2005, her
treating orthopaedist, Dr. Eric T. Schwartz, noted that plaintiff "was capable of returning
to regular work duty with the U.S. Postal Service."  (*Id. at* 288)   However, plaintiff did
not return to work.

      At the request of the Social Security Administration, plaintiff was evaluated by Dr.
Irwin Lifrak in January 2006.  Plaintiff reported to Dr. Lifrak that since 1994, she has
been suffering from pain in both of her upper extremities and pain originating in her
lumbosacral spine and radiating through both of her lower extremities.  (*Id.* at 290).
Despite her pain, plaintiff estimated that she could walk, sit and climb stairs for a total of
up to three hours and stand for a total of up to three hours in an eight hour work day.
(*Id.*)  During the examination, plaintiff was able to get on and off the examining table
without help and was able to pick up coins and paperclips without difficulty.  (*Id.* at 292).
Plaintiff's range of motion was limited to 80 degrees out of 90 degrees in the
lumbosacral spine and 140 degrees out of 150 degrees in the right and left shoulders.
Plaintiff also had slight limitations in the range of motion of her ankle and could not walk
on her heels or toes.  (290-291, 294-295)  Plaintiff had no limitations in her elbows,

arms and hands and had normal muscle tone in her lower extremities. (*Id.* at 294)

Plaintiff's grip strength was normal at 5/5 in each hand. (*Id.* at 292)  According to

testing with a hydraulic dynamometer, plaintiff could grip 45 pounds in the right hand

and 40 pounds in the left hand. (*Id.* at 291-292)  Dr. Lifrak diagnosed plaintiff with

degenerative joint disease and questionable disc damage, which might account for her

pain and limited range of motion in her lumbosacral spine and ankles.  Dr. Lifrak further

determined that plaintiff could lift up to ten pounds regularly and could climb stairs, sit

for four to six hours, and stand for four to five hours in a normal work day with

customary breaks. (*Id.* at 293)

In March 2006, plaintiff reported to Dr. Tamesis for a flare-up in her arthritis and

increased fatigue. (*Id.* at 386)  Plaintiff's symptoms were not relieved with Prednisone.

Dr. Tamesis diagnosed plaintiff with fibromyalgia and degenerative joint disease and

prescribed 200 mg Plaquenil, twice daily. (*Id.*)  Her symptoms continued and, in April

2006, Dr. Tamesis prescribed 7.5 mg of Methotrexate, four times per week. (*Id.* at 383)

By September 2006, Dr. Tamesis increased the dosage of Methotrexate to 17.5

mg and continued plaintiff on Neurontin and Elavil.  On examination, Dr. Tamesis noted

multiple tender points, including tenderness in plaintiff's carpal bones, in the

lumbosacral area, and in the sacroiliac joints.  Despite the increased medications,

plaintiff continued to report joint pain and stiffness.  In early 2007, Dr. Tamesis

diagnosed plaintiff with psoriatic arthritis, and plaintiff underwent Humira injections.

In March 2007, plaintiff's medical records were reviewed by Dr. Karen Sarpolis, a

state agency physician.  Dr. Sarpolis considered medical evidence related to plaintiff's

4

arthritis, sciatica, high blood pressure, hypothyroidism, incontinence, obesity and sleep apnea. Despite these limitations, Dr. Sarpolis concluded that plaintiff could perform work at the medium exertional level. (*Id.* at 56, 410-415)

In April and December 2007, plaintiff treated with Dr. Eugene Godfrey, a pain management specialist. Dr. Godfrey administered a series of lumbar injections, which plaintiff described as providing her with "a great deal of relief" for a period of time. (*Id.* at 452-457)

In February 2008, plaintiff reported to Dr. Tamesis that she experienced improvement with Lyrica. She also reported taking an increased dose of Cymbalta for depression and that her mood had improved. (*Id.* at 518-519)

In April 2008, during her last documented visit with Dr. Tamesis, plaintiff reported that she continued to feel better with Lyrica. She reported tremors, but less pain in her fingers and no joint swelling. Plaintiff remained fatigued and reported poor sleep without Ambien. (*Id.* at 517)

At the request of plaintiff's counsel, Dr. Tamesis completed a residual functional capacity questionnaire for plaintiff. Dr. Tamesis opined that plaintiff could stand for ten minutes at a time and sit for twenty minutes at a time. He further opined that she could lift less than ten pounds occasionally and sit for less than two hours and stand for less than two hours in an eight hour day. (*Id.* at 530-532)

5

### D. Hearing Before the ALJ

#### 1. Plaintiff's testimony

Plaintiff lives with her sister and her nephew. (*Id.* at 26)  She is 5'5" tall and approximately 230 pounds. (*Id.* at 26)  Plaintiff was in the Air Force for nearly 22 years, achieving the rank of Master Sergeant, E-7. (*Id.* at 29)  She currently receives income from her military medical retirement and VA benefits.  Her last formal employment was in 2005, when she worked for the United States Postal Service. (*Id.* at 26)  According to plaintiff, she could not perform her job at the Postal Service and, therefore, did not return to work after her ankle injury. (*Id.* at 27-28)

Plaintiff testified about a variety of impairments from which she suffers, including arthritis pain in her hands, pain in her feet and back, depression, and incontinence. (*Id.* at 29-42)  She takes 19 different medications and experiences side effects like confusion, easy bruising, constipation, unquenchable thirst, and depression. (*Id.* at 40)  Plaintiff testified that she experiences numbness in her hands and has difficulty gripping things, carrying things, pulling and pushing. (*Id.* at 37)  Plaintiff also testified that she has significant back pain, plantar fascitis, and Achilles tendinitis, all of which negatively impact her ability to stand or sit for extended periods of time. (*Id.* at 30)  Plaintiff treats with a podiatrist every two to three months for injections in her heel, a pain management specialist every three months for injections in her back, and a psychologist every two months for depression. (*Id.* at 30, 37)

Plaintiff testified that she drives independently and will pick up little items from the grocery store, but cannot do major grocery shopping. (*Id.* at 33-34)  She cannot

6

use a computer due to her hand pain and cannot do the laundry, sweep, weed the

garden or mow the lawn. (*Id.*) She does bathe and dress herself, but it takes her two

hours to get dressed in the morning. (*Id.*) Her sister does the majority of the household

chores including paying the bills. (*Id.* at 33) Plaintiff spends her day making light meals

for herself in the microwave, taking her ten year old nephew to soccer practice,

watching his games, supervising him in the house, and going to church. (*Id.* at 34-36)

She testified that she can only sit for half an hour at a time and then needs to lay down

for about an hour. (*Id.* at 41)

### 2. Vocational expert testimony

Following plaintiff's testimony, the ALJ posed several hypothetical questions to

the VE. Specifically, the ALJ asked the VE to consider

> a hypothetical individual 46 years old with a high school or better education. The ability to read, write and use numbers . . . [w]ith the following restrictions, able to lift and carry ten to 20 pounds. Stand and walk six [hours], sit six [hours]. No ladders or scaffolds. No dangerous heights. No dangerous machinery. Able to understand and remember and carry out detailed instructions adequately. And able to adequately concentrate and persist at that level of complexity. Would do better in a lower stress environment, which I would suggest would be not production schedule oriented.

(*Id.* at 46) Based on this hypothetical, the VE testified that the hypothetical plaintiff

could perform at least two light, unskilled positions: office helper with 475 positions

locally and 140,000 positions nationally; and cashier with 1,500 positions locally and

380,000 nationally. (*Id.* at 47) The ALJ further added to his hypothetical a sit/stand

option. (*Id.* at 48) In response, the VE omitted the job of office helper, which does not

allow for a sit/stand option at will, and added the job of order clerk as an example of a

job that the hypothetical plaintiff could perform with a sit/stand option and with the

7

additional limitation of only occasional use of the hands. (*Id.* at 48-49)  The VE further acknowledged that, if plaintiff's hearing testimony was accepted as true, she could not perform any work in the economy. (*Id.* at 50)

## III. **STANDARD OF REVIEW**

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive, if they are supported by substantial evidence.  Accordingly, judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. *See Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir. 1986).  In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. *See id.*  In other words, even if the reviewing court would have decided the case differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See id.* at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence.  As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56.  The inquiry performed is the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party.

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (internal citations omitted). Thus, in the context of judicial review under § 405(g), "[a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion." *See Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of the plaintiff's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

## IV. DISCUSSION

### A. Regulatory Framework

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or

9

can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." *See* 20 C.F.R. §§ 404.1505. The claimant bears the initial burden of proving disability. *See* 20 C.F.R. §§ 404.1512(a); *Podeworthy v. Harris*, 745 F.2d 210, 217 (3d Cir.1984). To qualify for disability insurance benefits, the claimant must establish that he was disabled prior to the date he was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

To determine disability, the Commissioner uses a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(I) (mandating a finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii) (requiring finding of not disabled when claimant's impairments are not severe). If claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (the "listing") that are presumed severe enough to preclude any

10

gainful work.[2]  *See* 20 C.F.R. § 404.1520(a)(4)(iii); Plummer, 186 F.3d at 428.  When a

claimant's impairment or its equivalent matches an impairment in the listing, the

claimant is presumed disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's

impairment, either singly or in combination, fails to meet or medically equal any listing,

the analysis continues to steps four and five.  *See* 20 C.F.R. § 404.1520(d).[3]

At step four, the Commissioner determines whether the claimant retains the RFC

to perform his past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv) (stating a

claimant is not disabled if able to return to past relevant work); *Plummer*, 186 F.3d at

428.  "The claimant bears the burden of demonstrating an inability to return to her past

relevant work."  *Plummer*, 186 F.3d at 428.  If the claimant is unable to return to his past

relevant work, step five requires the Commissioner to determine whether the claimant's

impairments preclude him from adjusting to any other available work.  *See* 20 C.F.R. §

404.1520(g) (mandating that a claimant is not disabled if the claimant can adjust to

other work); *Plummer*, 186 F.3d at 428.  At this last step, the burden is on the

Commissioner to show that the claimant is capable of performing other available work

before denying disability benefits.  *See Plummer*, 186 F.3d at 428.  In other words, the

Commissioner must prove that "there are other jobs existing in significant numbers in

_____

[2]Additionally, at steps two and three, claimant's impairments must meet the
duration requirement of twelve months.  *See* 20 C.F.R. § 404.1520(a)(4)(ii-iii).

[3]Prior to step four, the Commissioner must assess the claimant's residual
functional capacity ("RFC").  *See* 20 C.F.R. § 404.1520(a)(4).  A claimant's RFC is "that
which an individual is still able to do despite the limitations caused by his or her
impairment[s]."  *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Burnett
v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)).

the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and [RFC.]"  *Id.*  This determination

requires the Commissioner to consider the cumulative effect of the claimant's

impairments and a vocational expert is often consulted.  *Id.*

### B. The ALJ's Decision

The ALJ considered the medical evidence of record and testimony received at

the hearing, and concluded that plaintiff retains the capacity for work and is not disabled

as defined by the Social Security Act.  The ALJ made the following enumerated

findings.

> 1.  The claimant meets the insured status requirements of the Social Security Act
> through December 31, 2010.
>
> 2.  The claimant has not engaged in substantial gainful activity since September
> 7, 2006, the amended alleged onset date (20 C.F.R. §§ 404.1520(b), 404.1571
> et seq.).
>
> 3.  The claimant has the following severe impairments:  degenerative joint
> disease, seronegative inflammatory arthritis, psoriatic arthritis, fibromyalgia
> obesity, and depression (20 C.F.R. § 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments
> that meets or medically equals one of the listed impairments in 20 C.F.R. Part
> 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the
> claimant has the [RFC] to perform light work as defined in 20 C.F.R. §
> 404.1567(a) except that she is limited to no climbing or ladders or scaffolds, no
> dangerous heights or machinery, jobs requiring only occasional rather than
> frequent use of the hands and jobs that allow her to change positions between
> sitting and standing at will, further limited to jobs with low stress, meaning not at
> production pace, simple work, due to pain and the effects of medication.
>
> 6.  The claimant is unable to perform any past relevant work (20 C.F.R. §§
> 404.1565).

7. The claimant was born on April 2, 1962 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. §§ 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1560(c), 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 7, 2006 through the date of this decision (20 C.F.R. §§ 404.1520(g)).

## C. Analysis

Plaintiff argues that the ALJ's determination was not based upon substantial evidence. Specifically, plaintiff contends that: (1) the ALJ's own RFC assessment of plaintiff precludes the jobs identified by the VE; (2) the ALJ erred by substituting her judgment for the judgment of the medical experts; and (3) the ALJ failed to include any limitations related to incontinence in her RFC and hypothetical question to the VE.

Reviewing the decision of the ALJ in light of the standard of review and relevant case law, the court concludes that this matter must be remanded to the ALJ for further findings and/or proceedings so as to resolve the conflict between the testimony of the VE and the Dictionary of Occupational Titles ("DOT"). Social Security Ruling ("SSR") 00-4p explains how to address such inconsistencies:

When there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before

13

relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). In this case, the VE identified

two jobs in the national economy that plaintiff could perform, the job of cashier,

identified as DOT 211.467-030, and order clerk, identified as DOT 209.567-014. With

respect to the order clerk position, the VE further testified that performing the duties of

the order clerk position requires only occasionally using the hands. (D.I. 8 at 49) The

VE's testimony squarely conflicts with the DOT which describes this position as

requiring frequently using the hands for handling, fingering, and reaching. DOT

209.567-014.

However, not every failure to inquire about or resolve inconsistencies under SSR

00-4p requires reversal, particularly if the inconsistency is minor and the ALJ's decision

is supported by other evidence.[4] In the court's view, the inconsistency at issue here is

not minor and implicates the heart of the ALJ's determination that plaintiff is not

---

[4]*See e.g., Rutherford v. Barnhart*, 399 F.3d 546, 557-558 (3d Cir. 2005) (recognizing that reversal is not required for failure to adhere to SSR 00-4p where conflicts are not present in all jobs identified by the VE or other substantial evidence exists to support the ALJ's decision); *Tisoit v. Barnhart*, 127 Fed. Appx. 572, 575 n.1 (3d Cir. 2005) (recognizing that the "mere failure to inquire about the possibility of an inconsistency under SSR 00-4p mandates reversal" and concluding that reversal was not required because "even if there was a conflict, it would be *de minimis* because the occupations identified by the VE are within the range or below the functioning levels of [the plaintiff's] previous work").

disabled because, under the ALJ's RFC formulation, plaintiff is essentially precluded

from performing either of the two jobs identified by the VE as supporting a denial of

benefits.[5]  In formulating plaintiff's RFC, the ALJ credited plaintiff's testimony regarding

her limitations in her hands by expressly limiting her to "jobs requiring only occasional

rather than frequent use of the hands." (D.I. 8 at 16)  That the ALJ drew a precise

distinction between occasional and frequent use of the hands in plaintiff's RFC

highlights the conflict between the VE's testimony and the DOT's description of the

order clerk position.  The terms "frequently" and "occasionally" are ascribed particular

meanings in the vocational context.  Performing an activity "frequently" means it is done

from 1/3 to 2/3 of the time, while performing an activity "occasionally" means it is done

very little up to 1/3 of the time.  SSR 83-14, 1983 WL 31254, at *2 (1983); SSR 83-10,

1983 WL 31251, at *5-6 (1983); DOT 211.467-030, 209.567-014, and Appendix C.

This distinction is not inconsequential, particularly when it pertains to limitations on

one's ability to use one's hands.  As defendant has noted, significant limitations on a

person's ability to use their hands for such tasks as manipulating, fingering or handling

can erode an entire occupational base.[6]  See SSR 96-9p, 1996 WL 374185 (S.S.A. July

---

[5]Notably, defendant does not contest plaintiff's assertion that the cashier position requires "constantly" using the hands for handling, fingering and reaching, and during the hearing, the VE gave no testimony regarding the use of the hands in the cashier position. DOT 211.467-030. Defendant has not argued that plaintiff is capable of performing the requirements of the cashier position given the RFC provided by the ALJ, and it is apparent to the court that the position is, in fact, precluded by the ALJ's RFC. Accordingly, the court focuses its attention on the position of order clerk, which is the only position upon which defendant can ultimately rely to support his conclusion that plaintiff is not disabled.

[6]The court notes that plaintiff does not necessarily argue that the entire light unskilled occupational base is eroded in her circumstances. (D.I. 14 at 7)  However,

15

2, 1996) ("Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base."); SSR 83-14, 1983 WL 31254 at *4 ("[A] limitation to unskilled sedentary work with an additional loss of bilateral manual dexterity that is significant . . . warrants a conclusion of "Disabled.")

In sum, the court is persuaded that the conflict between the testimony of the VE and the DOT is significant regarding the frequency of hand use for the job of order clerk, particularly in light of the ALJ's RFC determination that plaintiff is limited to only occasional use of the hands. As the record currently stands, the ALJ's RFC precludes plaintiff from being capable of performing any of the jobs identified by the VE. Accordingly, the court cannot conclude that the ALJ's decision denying plaintiff DIB is supported by substantial evidence and, therefore, the court will remand this matter to the ALJ for further findings and/or proceedings.

## V. CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment will be granted to the extent that the case is remanded for further findings and/or proceedings consistent with this memorandum opinion.  Defendant's motion for summary judgment is denied.

An appropriate order shall issue.

---

the court finds defendant's views concerning dexterity and hand-use limitations to underscore the court's conclusion that the conflict here is significant to defendant's overall findings and, thus, requires resolution on remand.